IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Davoud Allen Eghbali, | ) | C/A No.: 1:12-3460-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Department of Energy at the Savannah River National Lab, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Davoud Allen Eghbali ("Plaintiff"), proceeding pro se, sues the Department of Energy at the Savannah River National Lab ("Defendant" or "DOE") for national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). This matter comes before the court on Defendant's renewed motion to dismiss filed on March 20, 2014, pursuant to Fed. R. Civ. P. 12(b)(1). [Entry #46]. On March 21, 2014, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and possible consequences if he failed to adequately respond to the motion to dismiss. [Entry #47]. The motion to dismiss having been fully briefed [Entries #46, #49], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion to dismiss is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned

recommends the district court grant Defendant's motion and dismiss Plaintiff's complaint in its entirety.

I.     Factual and Procedural Background

Plaintiff alleges that he immigrated to the United States from Iran in 1979 and is a naturalized United States citizen. [Entry #1 at 4]. He states that he began working for the Savannah River Site ("SRS") in May 1989 as a nuclear criticality safety specialist. *Id.* He contends that he began working for Westinghouse Safety Management Solutions ("WSMS"),[1] a contractor providing support to SRS, in 1997 and continued to perform the job of nuclear criticality safety specialist until 2010. *Id.*

Plaintiff alleges that he was indicted in September 2009 for sending money to his family in Iran, but that the charge was later dismissed without prejudice. *Id.* He contends that at the time of the indictment, Defendant instructed WSMS to deny him access to his workplace pending the outcome of the indictment. *Id.*

Plaintiff asserts that in January 2010, while he was on suspension from WSMS, he was offered a position by another SRS contractor, Savannah River Nuclear Solutions, LLC ("SRNS"), but that Defendant refused to allow SRNS to invite him to the site for a job interview. *Id.* at 5. He alleges that in February 2010, WSMS terminated his employment even though the indictment had been dismissed and his job did not require a security clearance. *Id.*

---

[1] WSMS is also known as Washington Safety Management Solutions. [Entry #46-2 at ¶ 12].

2

Plaintiff asserts that Defendant's refusal to allow him to enter SRS resulted in his loss of employment with WSMS and resulted in the loss of his employment opportunity with SRNS. *Id.* He contends that Defendant's actions were in violation of Title VII and resulted in lost income, the loss of his home, pain and suffering, mental anguish, emotional damages, and damage to his reputation. *Id.* at 5–6.

On July 2, 2013, Defendant filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. [Entry #24]. On September 5, 2013, the undersigned issued a Report and Recommendation recommending that Defendant's motion be granted on the grounds that the revocation of a security clearance is not reviewable by the courts. [Entry #31]. Plaintiff filed an objection to the Report and Recommendation clarifying that his complaint was based not on the revocation of a security clearance (which had been suspended in 2001), but on a denial of access to SRS. [Entry #34 at 1]. Thereafter, the district judge denied Defendant's motion to dismiss with leave to refile the motion and address specific issues identified by the court. [Entry #44]. First, the court instructed the parties to brief how Defendant's decision to deny Plaintiff access to SRS was connected to a security clearance decision. [Entry #37]. Second, the court sua sponte raised the issue of whether Plaintiff was included within the class of persons permitted to sue Defendant under Title VII. *Id.* Defendant filed its amended motion to dismiss for lack of subject matter jurisdiction on March 20, 2014. [Entry #46].

II.     Discussion

    A.     Standard of Review

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) where the court lacks subject-matter jurisdiction. A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

B.   Analysis

1.   Denial of Access

Through Plaintiff's objections and Defendant's amended motion, the parties have clarified that Defendant denied Plaintiff access to SRS, but did not deny him a security clearance. Thus, the issue before the court is whether the denial of access to SRS is reviewable by the court. Defendant asserts that the United States Supreme Court's decision in *Deptartment of the Navy v. Egan*, 484 U.S. 518 (1988), is controlling. [Entry #46-4 at 1–2].

In *Egan*, the Court declared that the approval, denial, or revocation of an individual's security clearance is within the executive branch's purview and "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive [Branch] in military and national security affairs." *Egan*, 484 U.S. at 530. The Fourth Circuit Court of Appeals has found that "in the absence of a specific mandate from Congress providing otherwise, *Egan* deprives the federal courts of subject-matter jurisdiction to review an agency's security clearance decision." *Reinbold v. Evers*, 187 F.3d 348, 357–58 (4th Cir. 1999). The Fourth Circuit has specifically held that *Egan* bars judicial review of security clearance decisions in Title VII cases. *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996).

Here, however, it is access to the premises, not the denial of a security clearance, that is at issue. Defendant argues that the *Egan* holding extends to all Executive Branch agency decisions involving "predictive judgments . . . predicated on an individual's potential to compromise national security." [Entry #46-4 at 3 (quoting *Kaplan v.*

5

*Conyers*, 733 F.3d 1148, 1157 (Fed. Cir. 2013))].  Defendant further argues that the decision to revoke Plaintiff's site access involved the very sort of "predictive judgment" that *Egan* requires to be committed to the broad discretion of the Executive Branch.  Contrary to Defendant's position and the *Kaplan* majority, the dissent in *Kaplan* noted that the majority's extension of *Egan* was not supported by the language of *Egan* or by other circuits that had limited *Egan* to security clearances.  *Id.* at 1167–68.  Specifically, in *Toy v. Holder*, 714 F.3d 881, 885 (5th Cir. 2013), an opinion issued just prior to the issuance of the *Kaplan* opinion, the Fifth Circuit Court of Appeals stated that "[n]o court has extended *Egan* beyond security clearances."  The *Toy* court noted that security clearances were different from building access because security clearance decisions were made by specialized groups of people using a specified process.  *Id.* at 885.  Moreover, the court found that decisions regarding building access lacked the oversight, process, and considered decision-making inherent in security clearance determinations.  *Id.* at 885–86.

Defendant asserts that the Fifth Circuit was mistaken in concluding that *Egan* had not been extended beyond security clearances.  [Entry #46-4 at 9].  The undersigned notes, however, that some of the cases Defendant relies on in support of this argument were specifically considered and distinguished by the *Toy* court.  *See Toy*, 714 F.3d at 884–85 (distinguishing *Brazil v. Dep't of Navy*, 66 F.3d 193 (9th Cir. 1995), and *Beattie v. United States*, 949 F.2d 1092 (10th Cir. 1991)).  Other cases cites by Defendant involve the denial of certifications, rather than a denial of access, and the undersigned finds them distinguishable from the facts presented here.  *See Brazil v. Dept. of the Navy*,

6

66 F.3d 193, 195 n.1, 196–97 (9th Cir. 1995); *Foote v. Chu*, 928 F. Supp. 2d 96, 99–101 (D.D.C. 2013).  Significantly, the Fourth Circuit has not yet held that *Egan* extends beyond security clearances.  As the court in *Foote* noted, "Extension of *Egan* to bar decisions other than the denial or revocation of a security clearance has proved [] controversial." *Id.* at 98.

In light of the absence of clear precedent on whether *Egan* extends beyond security clearances, the undersigned does not recommend extending it here.  The *Toy* court's concern regarding a lack of oversight, process, and considered decision-making implicit in a defendant's decision to deny a plaintiff access also appear to be present in this case.

Defendant asserts that the *Toy* decision provides an independent, alternative ground for dismissal.  [Entry #46-4 at 10–11].  Specifically, although the *Toy* court did not extend *Egan* beyond security clearances, it did dismiss the plaintiff's Title VII claim based on an exception to the statute providing that it is not an unlawful employment practice if:

> (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and
>
> (2) such individual has not fulfilled or has ceased to fulfill that requirement.

*Toy*, 714 F.3d at 883–84 (quoting 42 U.S.C. § 2000e-2(g)).

Notably, however, Defendant has not fully briefed this issue, instead relying on its argument under *Egan* in support of dismissal. Therefore, the undersigned does not recommend dismissal under the Title VII exception, particularly because Defendant has not identified any statute or executive order of the President on which to base the exception. The undersigned notes that Plaintiff appears to concede the applicability of 10 C.F.R. Part 710, which establishes the criteria and procedures for determining eligibility for access to classified matter or special nuclear material. *See* Entry #49 at 6, 8.

### 2.    Applicability of Title VII

Defendant next argues that Plaintiff's claims should be dismissed for lack of jurisdiction because Plaintiff was not a federal employee and is, therefore, not entitled to the protections set forth in Title VII. Pursuant to 42 U.S.C. § 2000e-16(a), "all personnel actions affecting employees or applicants for employment" with the federal government must "be made free from any discrimination based on race, color, religion, sex, or national origin."

Plaintiff's complaint is premised on two grounds: (1) his loss of employment with WSMS and (2) his alleged inability to interview for employment with SRNS. [Entry #1 at ¶¶ 5–6, 8–9]. Relying on affidavits, Defendant provides the following information regarding these entities:

- SRNS is the Managing and Operator ("M&O") contractor at SRS, is a private company, and is not an affiliate of DOE. [Entry #46-2 at ¶¶ 3–4].
- SRNS has been under contract ("M&O Contract") with DOE to manage and operate SRS for DOE since August 1, 2008. *Id.* at ¶ 4.
- Under the M&O Contract, DOE pays SRNS reasonable and allowable costs as well as a fee for the work SRNS performs. *Id.* DOE retains oversight responsibility of SRNS in its performance of the M&O Contract. *Id.*

8

- WSMS is a subcontractor with SRNS and has no privity of contract with DOE. *Id.* at ¶¶ 13–14.

Plaintiff has not disputed Defendant's characterization of the relationships between DOE, SRNS, and WSMS, nor has he offered any response to Defendant's argument that Title VII is inapplicable to the facts presented here. Rather, Plaintiff admits that he was not an employee of Defendant [Entry #49 at 6 (Plaintiff writes in the first person, "Eghbali never claimed he was an employee of either SRNS or DOE.")] and does not assert that he was applying for employment with Defendant. In light of these facts, the undersigned recommends finding that Plaintiff does not fall within the protections afforded by 42 U.S.C. § 2000e-16(a) and, therefore, Title VII does not apply. The undersigned further recommends that Plaintiff's complaint, which includes only a single claim under Title VII, be dismissed in its entirety for lack of subject matter jurisdiction.

In making this recommendation, the undersigned has considered whether Plaintiff has stated a claim of interference under Title VII. In *Bender v. Suburban Hosp.*, 159 F.3d 186 (4th Cir. 1998), the Fourth Circuit assumed, without deciding, that an entity that is an "employer" under Title VII may be liable for interfering with someone's employment relationship with a third party if done for discriminatory reasons. *Id.* at 188 (citing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341–42 (D.C. Cir. 1973)). In *Bender*, the defendant hospital denied the plaintiff doctor staff privileges. 159 F.3d at 187. The doctor was an independent contractor of the hospital, rather than an employee, but argued that the hospital was still liable to her for Title VII sex discrimination because it had

9

harmed her employment relationship with a third party. *Id.* at 188. The court stated that to establish a Title VII interference claim, the plaintiff must demonstrate an "employment relationship" with a third party, which the plaintiff doctor had failed to do. *Id.* at 189. The court was careful not to expressly hold that Title VII provides for an interference claim. Moreover, the basis for an interference claim is 42 U.S.C. § 2000e-2(a), which does not apply to the federal government. *See* 42 U.S.C. § 2000e(b). Finally, the *Bender* opinion provided that only an "employer" under Title VII may be liable on an interference claim; however, Title VII expressly excludes the federal government from its definition of employer. *Id.* For these reasons, the undersigned declines to find that Plaintiff has stated an interference claim under Title VII.

III.    Conclusion

For the foregoing reasons, the undersigned recommends the district court grant Defendant's motion to dismiss Plaintiff's complaint [Entry #46].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 9, 2014                                      Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).